**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ANTHONY CURTIS BEAVER,　　　　　:
　　　　　　　　　　　　　　　　　:　Civil Action No. 07-4328(JBS)
　　　　　　Plaintiff,　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　v.　　　　　　　　　:　**OPINION**
　　　　　　　　　　　　　　　　　:
BURLINGTON COUNTY DETENTION　　:
CENTER, et al.,　　　　　　　　:
　　　　　　　　　　　　　　　　　:
　　　　　　Defendants.　　　　:

**APPEARANCES:**

　　　ANTHONY CURTIS BEAVER, Plaintiff pro se
　　　#92729
　　　Northumberland County Prison
　　　39 North 2ND Street
　　　Sunbury, Pennsylvania 17801

**SIMANDLE,** District Judge

　　　Plaintiff Anthony Curtis Beaver ("Beaver"), currently confined at the Northumberland County Prison in Sunbury, Pennsylvania, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights.  Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief. For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

## I. BACKGROUND

Beaver brings this civil rights action against the following numerous defendants: the Burlington County Detention Center ("BCDC"); Lieutenant Larkens, a correctional officer at BCDC; the Burlington County Freeholders; the Burlington County Public Defenders Office; Holly C. Fusco, Esq., a Burlington County Public Defender; Theresa Ganim, Esq., a Burlington County Public Defender; North Hanover Township Police; Ptl. Kyle Tuliano of the North Hanover Township Police Department; North Hanover Twp. Magisterial Court; the Burlington County Superior Court of New Jersey; the Honorable Thomas S. Smith, Jr., Superior Court of New Jersey, Burlington County; New Jersey Governor Jon Corzine; Nina Mitchell Wells, Secretary of State for the State of New Jersey; Pennsylvania Governor Edward G. Rendell; Sedan C. Contes, Secretary of the Commonwealth of Pennsylvania; Linda Richards, Clerk of the Common Pleas Court in Union County, PA; D. Pete Johnson, Esq., Union County, PA District Attorney; Union County

2

Superior Court in Lewisburg, PA; Union County Magisterial Court
in Lewisburg, PA; Judge Jeffrey L. Mensch, Union County
Magisterial Court in Mifflinburg, PA; the Borough of Mifflinburg,
PA; Mifflinburg Borough Police; Sheriff's Office of Union County,
PA; Sheriff John P. Schrawder, Union County, PA; Deputy Sheriff
Paul W. Shipton, Union County, PA; Deputy Sheriff Robert L.
Ulmer, Union County, PA; State Trooper F. Milton, Union County,
PA; and State Trooper Bradley D. Rishel, Union County, PA.  The
following factual allegations by plaintiff are taken from the
Complaint and are accepted for purposes of this screening only.
The Court has made no findings as to the veracity of plaintiff's
allegations.

Beaver first claims that his civil rights under the Fifth
and Thirteenth Amendments have been violated because he was
"forced to make voluntary [sic] statements."  (Complaint at pg.
4).  He states that he had invoked his Fifth Amendment right to
remain silent when taken into custody by defendant Patrolman Kyle
Tuliano, of the North Hanover Township Police Department, and
Tuliano beat plaintiff while plaintiff was handcuffed to extract
statements that were allegedly used to issue warrants from
Pennsylvania.

Beaver next asserts that the receiving stolen property
charges against him in North Hanover Twp., Burlington County, New
Jersey were dropped or administratively dismissed.  However, he

3

has been charged in Pennsylvania on two counts of theft and
receiving stolen property based on the charges that were dropped
in New Jersey.  Beaver claims that this violates double jeopardy
and state law.

Beaver also alleges that the Mifflinburg Borough police
harassed him at his mother's apartment eight times within six
days without charging plaintiff with any crimes.  The Union
County Sheriff also harassed and threatened plaintiff three times
at the same location, but did not arrest Beaver on any charges.
Beaver complained to the district attorney in Union County and to
the Pennsylvania Governor's Office, but nothing was done.

Next, Beaver alleges that the Union County Sheriff revoked
plaintiff's concealed firearms license without justification, and
interfered with the reinstatement of plaintiff's Social Security
Disability benefits.

Beaver further states that, while he was confined at the
Burlington County Detention Center in New Jersey, he was denied
accommodations for his birth defect.  He claims that he was held
in administrative segregation so as to restrict his access to the
law library to once a week.  Last, Beaver contends that the state
charges against him are not consistent with the state offenses.

Beaver demands $5 million from the defendants in
compensatory damages.  He also filed three motions: (1) an
application for in forma pauperis status; (2) a motion to enjoin

defendants from making any "communication, detainment, prosecution, and/or warrants" against plaintiff; and (3) a motion to compel investigation into plaintiff's statements.

## II.   STANDARDS FOR A SUA SPONTE DISMISSAL

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding in forma pauperis or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to sua sponte dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a pro se complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); United States v. Day, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court need not, however, credit a pro se plaintiff's "bald assertions" or "legal conclusions."  Id.

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one. Deutsch v. United States, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

The Supreme Court recently reaffirmed the liberality to be afforded to pro se pleadings.  In Erickson v. Pardus, __ U.S. __, 127 S. Ct. 2197 (2007), the Court reiterated that Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Id. at 2200, quoting Rule 8(a)(2), Fed. R. Civ. P.  The Court continued:  "Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Id., quoting Bell Atlantic Corp. v. Twombly, 550 U.S. ___, ___, 127 S. Ct. 1955, 1964 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  In Erickson, the Court thus held that a pro se prisoner's allegation of harm from untreated hepatitis C was not too conclusory to put that matter at issue. Erickson, 127 S. Ct. 2200.  The requisite standard, even after Twombly, remains that, "when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint." Id., citing Twombly, 127 S. Ct. at 1964.  Further, where a complaint can be remedied

6

by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C. § 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.  <u>SECTION 1983 ACTIONS</u>

Beaver brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.  <u>ANALYSIS</u>

A.  <u>Fifth Amendment Self-Incrimination Claim</u>

Beaver alleges that defendant Tuliano forced plaintiff to make statements that were apparently incriminating after Beaver had invoked his Fifth Amendment right to remain silent.  Beaver claims that this conduct by defendant Tuliano violated the Fifth Amendment.[1]

---

[1]  Beaver names the North Hanover Township Police Department as a defendant in this matter, but does not allege any facts to support a claim that the Police Department violated plaintiff's constitutional rights.  At best, this Court finds that plaintiff may be asserting that the North Hanover Twp. Police Department is liable for the conduct of its employee officer, defendant Tuliano, based on a theory of <u>respondeat</u> <u>superior</u>.

In New Jersey, a municipal police department is not an entity separate from the municipality.  <u>Bonenberger v. Plymouth Twp.</u>, 132 F.3d 20, 25 (3d Cir. 1997)(holding police department and municipality same for § 1983); <u>N.J. Stat. Ann.</u> § 40A:14-118 (municipal police department is "an executive and enforcement function of municipal government").  A municipality or government entity like a municipal police department is not liable under 42 U.S.C. § 1983 on a <u>respondeat</u> <u>superior</u> theory.  <u>Monell v. Dept. Soc. Servs. Of New York</u>, 436 U.S. 658, 691 (1978).  A government entity is only liable for its agent's actions where policy or custom of the entity was the "moving force" behind the agent's

The Fifth Amendment protects against compelled self incrimination.  Chavez v. Martinez, 538 U.S. 760, 766 (2003)(plurality).  However, a plaintiff may not base a § 1983 claim on the mere fact that he was questioned by the police while in custody without having been provided Miranda warnings where there is no claim that the statements obtained were used against the plaintiff.  Chavez, 538 U.S. at 766-70; Renda v. King, 347 F.3d 550, 552, 557 (3d Cir. 2003)("a plaintiff may not base a § 1983 claim on the mere fact that the police questioned her in custody without providing Miranda warnings when there is no claim that the plaintiff's answers were used against her at trial").

Here, it is not apparent that any statements allegedly obtained by Tuliano actually were used against Beaver.  Indeed, plaintiff admits that the Burlington County, NJ charges were administratively dismissed.  However, to the extent any such alleged statements were used against Beaver in his Pennsylvania criminal matter, such claim of compelled self-incrimination would be barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994).

---

deprivation of a constitutional right.  Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Here, Beaver fails to allege any official policies or customs that caused a constitutional violation in this case. Therefore, this Court will dismiss the Complaint in its entirety as against the North Hanover Township Police Department because any claim asserted is based on a theory of respondeat superior, which is not cognizable in a § 1983 action.

In Heck, the Supreme Court addressed whether a prisoner could challenge the constitutionality of his conviction in a suit for damages only under § 1983 (a form of relief not available through a habeas corpus proceeding).  The Court rejected § 1983 as a vehicle to challenge the lawfulness of a criminal judgment.

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.  A claim for damages bearing that relationship to a conviction or sentence that has not been so invalidated is not cognizable under § 1983.

512 U.S. at 486-87 (footnote omitted).  The Court further instructed district courts, in determining whether a complaint states a claim under § 1983, to evaluate whether a favorable outcome would necessarily imply the invalidity of a criminal judgment.

> Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated.  But if the district court determines that the plaintiff's action, even if successful, will not demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed, in the absence of some other bar to the suit.

512 U.S. at 487 (footnotes omitted).  The Court held that "a

10

§ 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated." Id. at 489-90.

Here, Beaver's request for money damages for this alleged Fifth Amendment violation concerning his compelled statements is an attempt to challenge the fact of his confinement. Thus, in the event Beaver is already convicted, in accordance with Preiser v. Rodriquez, 411 U.S. 475 (1973), his Fifth Amendment claim against Tuliano must be brought in a habeas petition, pursuant to 28 U.S.C. § 2254, after exhaustion of state court remedies. If Beaver's conviction has not been invalidated, then his request for money damages is barred by Heck, until Beaver receives a favorable outcome in his habeas case or otherwise has his claims adjudicated in his favor. Accordingly, Beaver's Fifth Amendment claim is not cognizable at this time and must, therefore, be dismissed without prejudice.[2]

Nevertheless, Chavez left open the possibility that a plaintiff could pursue a claim for violation of substantive due process in the event of genuine physical or mental coercion surrounding his confession. The Supreme Court stated: "Our

---

    [2] In the event the criminal charges are still pending in state court, then this action is also barred by Younger v. Harris, 401 U.S. 37 (1971). Any such claim of compelled self-incrimination must first be raised in Plaintiff's ongoing state criminal case; a federal court generally will not intercede to consider issues that the plaintiff has an opportunity to raise before the state court. Id.

11

views on the proper scope of the Fifth Amendment's Self-Incrimination Clause do not mean that police torture or other abuse that results in a confession is constitutionally permissible so long as the statements are not used at trial; it simply means that the Fourteenth Amendment's Due Process Clause, rather than the Fifth Amendment's Self-Incrimination Clause, would govern the inquiry in those cases and provide relief in appropriate circumstances."  Chavez, 538 U.S. at 773.

Here, Beaver does allege that Tuliano beat him or used force to compel Beaver to give a statement.  This alleged use of physical and mental force to coerce plaintiff into giving a confession or making an inculpatory statement, if true, may be actionable even if the statement was not used against Beaver. Therefore, this Court will allow this limited claim to proceed against defendant Tuliano.

B.  Double Jeopardy Claim

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  Three separate guarantees are "embodied in the Double Jeopardy Clause: It protects against a second prosecution for the same offense after acquittal [or mistrial], against a second prosecution for the same offense after conviction, and against multiple punishments for the same offense."  Justices of Boston Mun. Court

v. Lydon, 466 U.S. 294, 306-307 (1984); see also Illinois v.
Vitale, 447 U.S. 410, 415 (1980).  The threshold question under
the Clause is whether the challenged provision imposes
"punishment."  Artway v. Attorney General of State of N.J., 81
F.3d 1235, 1253 (3d Cir. 1966).

Here, it is not clear whether Beaver is alleging that a
Pennsylvania state court is prosecuting plaintiff on the very
same charges that were dismissed by the New Jersey state court in
Burlington County.  To the extent that double jeopardy may apply,
however, Beaver must raise this claim in his state court criminal
proceedings before proceeding in federal court.  See Younger v.
Harris, 401 U.S. 37 (1971).  In the event Beaver has been
convicted, then he must first exhaust his state court remedies
before bringing a federal habeas petition on this ground to
challenge his conviction.  Preiser, supra.  Therefore, this
double jeopardy claim is dismissed without prejudice, as against
all defendants, for failure to state a claim at this time.

Likewise, Beaver's claim that the state charges against him
are not consistent with the state offenses should be dismissed.
Any challenge to his pending state criminal proceeding should be
raised in that state court.  See Younger, supra.  If Beaver has
been convicted, then he must first exhaust his state court
remedies before bringing a federal habeas petition to challenge
his conviction on these grounds.

C.  Police Harassment

Beaver next alleges that the Mifflinburg Borough Police have harassed him on numerous occasions without cause and without any basis to arrest plaintiff.  He also alleges that the Union County Sheriff, John P. Schrawder harassed and threatened him on three occasions at plaintiff's mother's address.  Beaver further states that the sheriff revoked plaintiff's concealed firearms license and interfered with the reinstatement of plaintiff's Social Security Disability benefits.  It would appear that Beaver's claim against the Union County Sheriff's Office is based on the allegedly unconstitutional conduct by Sheriff Schrawder.  The Complaint does not make any factual allegations against the Sheriff's Office.[3]

Beaver appears to allege that these defendants harassed and intimidated him in violation of his Fourth, Fifth and Fourteenth Amendment rights by going to his mother's residence on numerous occasions in a short period of time to question plaintiff and force him to incriminate himself.  The Sheriff also allegedly interfered with plaintiff's Social Security Disability benefits

---

[3]  As noted earlier, see fn. 1 of this Opinion, there is no § 1983 liability based on a theory of respondeat superior.  See Monell, 436 U.S. at 691.  Here, it may be argued that the Union County Sheriff's Office is being sued on a theory of respondeat superior based on the conduct of its agent, Sheriff Schrawder.  However, because the Sheriff sets the policy of the Sheriff's Office and arguably can be said to be the moving force behind the Office itself, this Court will not dismiss the Union County Sheriff's Office as a defendant from this action at this time.

and firearms license to intimidate and harass plaintiff.  Beaver
suggests that there was no reasonable basis or justification for
the police and sheriff to intrude in his home and private affairs
since Beaver was never arrested on any charges.

All of these allegedly unlawful acts by Pennsylvania
defendants appear to have occurred exclusively in Mifflinburg and
Union County, Pennsylvania.  Plaintiff alleges no nexus between
the conduct of these defendants with the conduct of the other
named defendants in this action.  Consequently, this Court finds
that these claims of harassment in violation of plaintiff's
constitutional rights, as asserted against defendants, the
Mifflinburg Police and the Union County Sheriff's Office and
Sheriff Schrawder, are subject to dismissal based on improper
venue, pursuant to 28 U.S.C. § 1391(b).

In a civil action not based solely on diversity of
citizenship, venue is proper:

> only in (1) a judicial district where any defendant resides,
> if all defendants reside in the same state, (2) a judicial
> district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a
> substantial part of property that is the subject of the
> action is situated, or (3) a judicial district in which any
> defendant may be found, if there is no district in which the
> action may otherwise be brought.

28 U.S.C. § 1391(b).

Here, Section 1391(b)(1) does not appear to create proper
venue in the District of New Jersey as there is no indication
that any of the Mifflinburg or Union County defendants reside

15

within this District.  In fact, all of these defendants are officials and/or employees located in Mifflinburg and Union County, PA in the Middle District of Pennsylvania, and presumably reside in that District.  Even the plaintiff resides outside the District of New Jersey, being confined at Sunbury, Pennsylvania, also in the Middle District of Pennsylvania.

Section 1391(b)(2) also does not create proper venue in the District of New Jersey because all of the events or violations are alleged to have occurred in Mifflinburg and Union County, PA in the Middle District of Pennsylvania.

Finally, Section 1391(b)(3) can be used as a basis for venue in a District only when proper venue cannot be reached through sections (1) and (2) in another District.  In this case, the Middle District of Pennsylvania provides proper venue because the defendants are located there and all of the events complained of occurred in that District.  These circumstances satisfy sections 1391(b)(1) and (2).

When venue is improper in the District where the action is brought, the court may dismiss, or in the interest of justice, transfer the action to a District where the action could have been brought.  28 U.S.C. § 1406(a).  Because this action is in its early stages, the interests of justice lean in favor of transfer rather than dismissal.  Accordingly, the claims asserted against these Union County and Mifflinburg defendants will be

16

severed from this action and transferred to the Middle District
of Pennsylvania.

D.   Claims Against the Public Defender Defendants

Beaver also asserts an unspecified claim against defendants,
Holly C. Fusco, Esq. And Theresa Ganim, Esq., both attorneys with
the Burlington County Public Defenders' Office, and the
Burlington County Public Defenders Office.   Presumably, Beaver
is asserting ineffective assistance of counsel against his
appointed counsel in his pending state criminal proceedings, but
he does not allege any facts to support any such claim.
Moreover, these defendants are not subject to liability under
§ 1983 because they are not state actors.

A public defender "does not act under color of state law
when performing a lawyer's traditional functions as counsel to a
defendant in a criminal proceeding."  Polk Co. v. Dodson, 454
U.S. 312, 325 (1981) (a public defender performing a lawyer's
traditional functions as counsel to a defendant, such as
determining trial strategy and whether to plead guilty, is not
acting under color of state law); Steward v. Meeker, 459 F.2d 669
(3d Cir. 1972) (privately-retained counsel does not act under
color of state law when representing client); Thomas v. Howard,
455 F.2d 228 (3d Cir. 1972) (court-appointed pool attorney does
not act under color of state law).

However, even if Beaver had pleaded facts establishing that these public defender defendants were acting under color of state law, any claim concerning a violation of plaintiff's right to effective assistance of counsel must first be raised in Beaver's ongoing state criminal case.  A federal court generally will not intercede to consider issues that the plaintiff has an opportunity to raise before the state court.  See Younger v. Harris, 401 U.S. 37 (1971).

Moreover, to the extent that Beaver's criminal trial is no longer pending, and he has been convicted and sentenced on the state charges, any claim of ineffective assistance of counsel in this regard must first be exhausted via state court remedies, *i.e.*, by direct appeal or other available state court review; and then, if appropriate, by filing a federal habeas application to assert any violations of federal constitutional or statutory law, namely, his claim of ineffective assistance of counsel.  Preiser v. Rodriguez, 411 U.S. 475 (1973).  Here, Beaver admits that his criminal case is ongoing and he has not been convicted or sentenced yet.

Therefore, this Court finds from the Complaint that the public defender defendants were not acting under color of state law when representing Beaver, and because any claim of ineffective assistance of counsel must be asserted under a federal habeas petition after plaintiff has been convicted and

exhausted his state court remedies, this claim asserting
liability under § 1983 will be dismissed for failure to state a
claim at this time, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii)
and 1915A(b)(1).

E.   Judicial Immunity

     Next, Beaver names as defendants the Honorable Thomas S.
Smith, Jr., J.S.C. of the Superior Court of New Jersey,
Burlington County, and the Honorable Jeffrey L. Mensch, a judge
in the municipal court in Mifflinburg, PA.  Beaver does not make
any factual allegations against these defendants in his Complaint
but it appears that he may be asserting that these judges have
denied him due process in not dismissing the charges against him.

     As a general rule, judges acting in their judicial capacity
are absolutely immune (in both their individual and official
capacities) from suit under the doctrine of judicial immunity.
See Mireless v. Waco, 502 U.S. 9 (1991).  "Judicial immunity is
an immunity from suit, not just from ultimate assessment of
damages."  Id., 502 U.S. at 11 (citing Mitchell v. Forsyth, 472
U.S. 511, 526 (1985)).  The Supreme Court has made clear that

> judges of courts of superior or general jurisdiction
> are not liable to civil actions for their judicial acts,
> even when such acts are in excess of their jurisdiction,
> and are alleged to have been done maliciously or corruptly.

Stump v. Sparkman, 435 U.S. 349, 355-56 (1978); see also Pierson
v. Ray, 386 U.S. 547, 554 (1967).  Thus, judicial immunity can be
overcome only for actions not taken in a judicial capacity, id.,

19

or for actions taken in a complete absence of all jurisdiction.
Mireless, 502 U.S. at 11-12.  Allegations that actions were
undertaken with an improper motive diminishes neither their
character as judicial actions nor the judge's immunity.  See
Forrester v. White, 484 U.S. 219, 227 (1988).

Here, as stated above, Beaver fails to assert any
allegations against Judge Smith or Judge Mensch.  At best, it may
be inferred from the Complaint that Beaver's claim against these
judges involve only court-related matters occurring during
plaintiff's state criminal proceedings.  Such claim is not
actionable.  There are no allegations to suggest that these
judges acted beyond the scope of their judicial authority, or in
the complete absence of all jurisdiction.  Therefore, Judge Smith
and Judge Mensch[4] are absolutely immune from liability, and the
Complaint will be dismissed with prejudice as against these
defendants.

F.   Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution
provides that, "The Judicial power of the United States shall not
be construed to extend to any suit in law or equity, commenced or

---

[4] The Court declines to transfer the claim against Judge
Mensch to the Middle District of Pennsylvania because this aspect
of the complaint is legally frivolous and should be dismissed
upon initial screening due to the clear application of judicial
immunity.  Unlike the claims discussed above in Part IV. C, it
would not be in the interest of justice to transfer a claim that
is so legally insufficient on its face.

prosecuted against one of the United States by citizens of another State, or by Citizens or Subjects of any Foreign State."

As a general proposition, a suit by private parties seeking to impose a liability which must be paid from public funds in a state treasury is barred from federal court by the Eleventh Amendment, unless Eleventh Amendment immunity is waived by the state itself or by federal statute. See, e.g., Edelman v. Jordan, 415 U.S. 651, 663 (1974). The Eleventh Amendment protects states and their agencies and departments from suit in federal court regardless of the type of relief sought. Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100 (1984). Similarly, absent consent by a state, the Eleventh Amendment bars federal court suits for money damages against state officers in their official capacities. See Kentucky v. Graham, 473 U.S. 159, 169 (1985). Section 1983 does not override a state's Eleventh Amendment immunity. Quern v. Jordan, 440 U.S. 332 (1979).

In addition, neither states, nor governmental entities that are considered arms of the state for Eleventh Amendment purposes, nor state officers sued in their official capacities for money damages are persons within the meaning of § 1983. Will v. Michigan Dept. of State Police, 491 U.S. 58, 64, 70-71 and n.10 (1989); Grabow v. Southern State Correctional Facility, 726 F.Supp. 537, 538-39 (D.N.J. 1989) (the New Jersey Department of Corrections is not a person under § 1983).

21

1.  *State and Municipal Court Defendants*

Here, Beaver asserts an unspecified claim against the Superior Court of New Jersey, Burlington County; the North Hanover Township, NJ municipal court; the state Common Pleas Court in Union County, PA; and the Lewisburg, PA municipal court. These defendants, however, are not subject to § 1983 liability for money damages as sought here by plaintiff.

First, the Superior Court of New Jersey and its vicinages have been found to be part of the judicial branch of the State of New Jersey, and are thus protected by the Eleventh Amendment. See Johnson v. State of New Jersey, 869 F. Supp. 289, 296-98 (D.N.J. 1994).  See also Hunter v. Supreme Court of New Jersey, 951 F. Supp. 1161, 1177 (D.N.J. 1996), aff'd, 118 F.3d 1575 (3d Cir. 1997).

Second, this Court finds that the state Court of Common Pleas in Union County, PA is likewise protected by the Eleventh Amendment. The few courts that have considered the status of state courts vis-a-vis the Eleventh Amendment have found that state courts are "arms" of the state entitled to share in the state's sovereign immunity.  See Greater Los Angeles Council on Deafness, Inc. v. Zolin, 812 F.2d 1103 (9th Cir.1987); Harris v. Missouri Court of Appeals, 787 F.2d 427 (8th Cir.), cert. denied, 479 U.S. 851 (1986); Monroe v. Horwitch, 820 F. Supp. 682 (D. Conn.1993), aff'd without op., 19 F.3d 9 (2d Cir.1994); Shoultes

v. Szekely, 654 F. Supp. 966 (W.D. Mich.1987); Robbins v. Robb, 638 F. Supp. 1320 (D. Mont.1986); N.A.A.C.P. v. State of California, 511 F. Supp. 1244 (E.D. Calif.1981), aff'd, 711 F.2d 121 (9th Cir.1983).

In N.A.A.C.P. v. State of California, the district court held: "[I]t seems clear that the judicial branch is an integral part of that unit which is referred to as the sovereign state." Id. at 1257.  The court added: "The fact that the defendant courts are the courts of entry into the state judicial system, rather than the courts of last resort, does not make them any less an integral part of the judicial branch of the State of California."  Id.

Therefore, this Court finds that the New Jersey Superior Court and the Court of Common Pleas in Pennsylvania are "arms" of their respective states entitled to share in their state's sovereign immunity.  This Court further finds that the judicial branch is an integral part of both the State of New Jersey and the Commonwealth of Pennsylvania.  The fact that the New Jersey Superior Court and the Court of Common Pleas are trial courts and not courts of last resort do not make them any less an integral part of their respective states.  Accordingly, this Court holds that plaintiff's claims for damages against the New Jersey Superior Court and the Court of Common Pleas in Union County, PA are barred by the Eleventh Amendment.

This Court also holds that the municipal or "magisterial" court defendants named by plaintiff, *i.e.*, the North Hanover Twp., NJ municipal court and the Lewisburg, PA municipal court are protected by the Eleventh Amendment.  Municipal courts provide judicial services, an area in which local governments are typically treated as "arm[s] of the State" for Eleventh Amendment purposes,[5] <u>Mt. Healthy City Bd. of Ed. V. Doyle</u>, 429 U.S. 274, 280 (1977), and thus enjoy the same immunity from unconsented suit as the States.  <u>See</u>, <u>e.g.</u>, <u>Callahan v. Philadelphia</u>, 207 F.3d 668, 670-74 (3d Cir. 2000)(municipal court is an "arm of the State" entitled to Eleventh Amendment immunity); <u>Kelly v.</u>

---

[5]  For instance, the State of New Jersey recognizes municipal courts as an integral part of its state-wide judicial system and the judicial power exercised by municipal court judges is the judicial power of the State.  <u>See</u> <u>Knight v, City of Margate</u>, 86 N.J. 374, 385 (1981).  There are aspects of New Jersey law that indicate a municipal court is a state court and not a city court.  For example, New Jersey statutes provide a municipal court jurisdiction over matters that are in no sense municipal, namely, handling the violation of various state laws and certain criminal offenses upon waiver of indictment and trial by jury.  <u>See</u> <u>N.J.S.A.</u> 2B:12-17 and 2B:12-18.  Municipal courts are courts of record, and appeals from judgments and orders of municipal courts are taken to the Superior Court of New Jersey. <u>State v. Garcia</u>, 297 N.J. Super. 108, 123 (Mun. Ct. 1996).  New Jersey statutes establish that the State retains direction and control over the municipal courts.  <u>N.J.S.A.</u> 2B:1-1.  New Jersey case law also bolsters the conclusion that the municipal court draws its power from the state.  "Administrative control of municipal courts rests in the Supreme Court, which has directed the Chief Justice to designate an Assignment Judge for each vicinage responsible for administration of all courts therein, including municipal courts."  <u>State v. Garcia</u>, 297 N.J. Super. at 124.

Municipal Courts, 97 F.3d 902, 907-08 (7th Cir. 1996)(same);

Franceschi v. Schwartz, 57 F.3d 828, 831 (9th Cir. 1995)(same).

Therefore, this Court will dismiss these named defendants from this litigation because they are immune from suit under the Eleventh Amendment.[6]

2.  *State Official Defendants*

Beaver also names the Governors of New Jersey and Pennsylvania and the Secretaries of the State of New Jersey and the Commonwealth of Pennsylvania as defendants in this matter. He does not make any factual allegations against these defendants,[7] but appears to assert their liability simply by virtue of their offices.

Although "state officials literally are persons ... a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office.  As such, it is no different from a suit against the State itself."  Will, 491 U.S. at 71.  Here, the Complaint does not expressly identify the capacity in which Beaver is suing these defendants; however, it is plain that any

_____

[6] Due to the clear application of Eleventh Amendment immunity to these state judicial entities, the Court likewise elects to dismiss rather than to transfer the claims against these Pennsylvania defendants to the Middle District of Pennsylvania.  See also n. 4, above.

[7]  Beaver does allege that he brought the matter about the Union County Sheriff to the attention of the Governor's office, but received no response.

damage award would be paid from the State treasuries in
contravention of the Eleventh Amendment.  See Edelman, 415 U.S.
at 662-65 (the Eleventh Amendment may bar a suit even though the
state is not named as a party, provided that the state is the
real party in interest).  "As long as the government entity
receives notice and an opportunity to respond, an official-
capacity suit is, in all respects other than name, to be treated
as a suit against the entity."  Kentucky v. Graham, 473 U.S. at
166.  Therefore, Beaver's purported claim for compensatory
damages from these state official defendants in their official
capacities must be dismissed with prejudice.[8]

G.   Failure to Allege Any Facts to Support a Claim

     This Court also will dismiss the Complaint without prejudice
as against the named defendants, Linda Richards, Clerk of the
Court of Common Pleas; Paul W. Shipton, Deputy Sheriff at Union
County, PA; Robert L. Ulmer, Deputy Sheriff at Union County, PA;
and State Troopers F. Milton and Bradley D. Rishel.  Plaintiff
does not allege any facts against these individuals to support
any claims of constitutional deprivation.[9]

_____

     [8]  To the extent that Beaver may be suing these defendants
in their individual capacities, the Court finds that the suit
fails because Beaver has not stated any claim of a violation of
his constitutional rights or any facts to show an omission or
conduct by these defendants in violation of his rights.

     [9]  This Court assumes, albeit without any factual support in
the Complaint, that Beaver may be attempting to allege that the
Clerk of the Court of Common Pleas denied him access to the state

26

However, should Beaver be able to establish any facts to support a claim against these defendants, he may make an application in the Middle District of Pennsylvania to amend the Complaint accordingly.  Cf., e.g., Thomas v. Independence Township, 2006 WL 2621094 (3d Cir. 2006) ("Even when a defendant does not formally move for a more definite statement, the district court has the discretion to demand more specific factual allegations in order to protect the substance of the qualified immunity defense and avoid subjecting government officials who may be immune from suit to needless discovery and the other burdens of litigation.").  Beaver should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.

---

courts and that the deputy sheriff and state trooper defendants may have participated in the alleged harassment asserted against the Mifflinburg Police and the Union County Sheriff.  However, as noted, there are no actual allegations against these individuals.

Therefore, this Court will dismiss these defendants from this action, without prejudice, because Beaver fails to state any claim against these defendants at this time.  In the event Beaver can allege facts to support a claim against any of these individuals, he may file a motion for leave to amend his complaint pursuant to Federal Rule of Civil Procedure 15.[10]

H.   Claim Against Union County District Attorney

Beaver also names D. Pete Johnson, the Union County, PA District Attorney as a defendant in this matter.  Again, Beaver

---

[10]  With respect to Linda Richards, the Clerk of the Court of Common Pleas, however, it does not appear likely that Beaver can substantiate any claim of a constitutional violation.  It is well established that, as a matter of law, the failure of a clerk to file a document does not violate a litigant's right of access to the courts.  See Snyder v. Nolen, 380 F.3d 279, 291-92 (7th Cir. 2004) (Easterbrook, J., concurring).  In Snyder, the court clerk failed to file a divorce petition submitted by a state prisoner because the clerk mistakenly believed that counsel was required to prosecute such an action.  Judge Easterbrook found no constitutional violation because a litigant has the opportunity to move the court to direct the clerk to file the document.  Id. "Errors in the course of litigation may justify motions and appeals; they do not support damages litigation under the Federal Constitution."  Id. at 293.  Here, Beaver does not allege any conduct or omission by the Clerk that is of constitutional dimension.  At most, the Complaint may be construed as asserting a claim of simple negligence by the Clerk in allegedly depriving Beaver access to the courts, which is not an actionable constitutional claim under § 1983.  See Turner v. Donnelly, 156 Fed. Appx. 481, 483-84 (3d Cir. 2005)(citing Daniels v. Williams, 474 U.S. 327, 328 (1986), where the Supreme Court removed negligent denials of access from the reach of § 1983; and Snyder, 380 F.3d at 291 n. 11 ("an allegation of simple negligence will not support a claim that an official has denied an individual of access to the courts")).

does not allege any facts to support a claim against this
defendant.

Moreover, "a state prosecuting attorney who act[s] within
the scope of his duties in initiating and pursuing a criminal
prosecution" is not amenable to suit under § 1983.  Imbler v.
Pachtman, 424 U.S. 409, 410 (1976).  Thus, a prosecutor's
appearance in court as an advocate in support of an application
for a search warrant and the presentation of evidence at such a
hearing are protected by absolute immunity.  Burns v. Reed, 500
U.S. 478, 492 (1991).  Similarly, "acts undertaken by a
prosecutor in preparing for the initiation of judicial
proceedings or for trial, and which occur in the course of his
role as an advocate for the State, are entitled to the
protections of absolute immunity."  Buckley v. Fitzsimmons, 509
U.S. 259, 273 (1993).

A prosecutor is not entitled to absolute immunity, however,
for actions undertaken in some other function.  See Kalina v.
Fletcher, 522 U.S. 118 (1997) (prosecutor is protected only by
qualified immunity for attesting to the truth of facts contained
in certification in support of arrest warrant, as in her
provision of such testimony she functioned as a complaining
witness rather than a prosecutorial advocate for the state);
Burns, 500 U.S. at 492-96 (the provision of legal advice to
police during pretrial investigation is protected only by

29

qualified immunity); <u>Buckley</u>, 409 U.S. at 276-78 (prosecutor is not acting as an advocate, and is not entitled to absolute immunity, when holding a press conference or fabricating evidence).  <u>See</u> <u>also</u> <u>Yarris v. County of Delaware</u>, 465 F.3d 129 (3d Cir. 2006)(where the Court of Appeals for the Third Circuit presents a detailed and nuanced analysis of when a prosecuting attorney is, and is not, entitled to absolute immunity for allegedly wrongful acts in connection with a prosecution, holding, for example, that a prosecutor is not entitled to absolute immunity for deliberately <u>destroying</u> highly exculpatory evidence, but is entitled to immunity for making the decision to deliberately <u>withhold</u> exculpatory evidence before and during trial, but not after the conclusion of adversarial proceedings).

Because Beaver alleges no facts against the prosecutor defendant in this case that would fall outside the scope of the defendant's duties in initiating and pursuing a criminal prosecution against Beaver, this Court will dismiss the Complaint against D. Pete Johnson, the Union County, PA District Attorney, for failure to state a claim at this time.

I.  <u>Claims Regarding Plaintiff's Detention</u>

Finally, Beaver asserts a claim against the Burlington County Detention Center ("BCDC"),[11] Lt. Larkens at the BCDC, and

---

[11]  Here, the claims asserted against the BCDC is subject to dismissal because jail facilities are not "persons" for purposes of § 1983 liability.  <u>See</u> <u>Grabow v. Southern State Correctional</u>

the Burlington County Freeholders, regarding the conditions of

his confinement.  Namely, Beaver alleges simply that he was held

in administrative segregation so as to limit his access to the

law library to once a week.

It appears that Beaver was a pretrial detainee confined at

the BCDC at the time of the incidents alleged against these

Burlington County defendants.  As a pretrial detainee, Beaver's

constitutional claims concerning the conditions of his

confinement are considered under the due process clause (of the

Fourteenth Amendment) instead of the Eighth Amendment.  See

Hubbard v. Taylor, 399 F.3d 150, 158 (3d Cir. 2005); Fuentes v.

Wagner, 206 F.3d 335, 341 n.9 (3d Cir. 2000); Monmouth County

Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346

n.31 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).  In

Hubbard, the Third Circuit clarified that the Eighth Amendment

standard only acts as a floor for due process inquiries into

medical and non-medical conditions of pretrial detainees.  399

F.3d at 165-67.  Pretrial detainees retain at least those

constitutional rights enjoyed by convicted prisoners with respect

to the conditions of their confinement.  Bell v. Wolfish, 441

U.S. 520, 545 (1979); Hubbard, 399 F.3d at 165-66; Natale v.

Facility, 726 F. Supp. 537, 538-39 (D.N.J. 1989); Mitchell v.
Chester County Farms Prison, 426 F. Supp. 271, 274 (D.C. Pa.
1976).  Accordingly, the Complaint will be dismissed in its
entirety against defendant BCDC, pursuant to 28 U.S.C. §§
1915(e)(2)(B)(ii) and 1915A(b)(1).

<u>Camden County Correctional Facility</u>, 318 F.3d 575, 581-82 (3d Cir. 2003).

A conditions of confinement claim is a constitutional attack on the general conditions, practices, and restrictions of pretrial or other detainee confinement.  <u>See</u> <u>Scott v. Moore</u>, 114 F.3d 51, 53 (5th Cir. 1997).  A constitutional violation exists if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective.  <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. at 538-39.  Analysis of whether a pre-trial detainee has been deprived of liberty without due process is governed by the standards set out by the Supreme Court in <u>Bell v. Wolfish</u>.  <u>See</u> <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or restrictions of pretrial detention that implicate only the protection against deprivation of liberty without due process of law, we think that the proper inquiry is whether those conditions amount to punishment of the detainee.  For under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law. ...
>
> Not every disability imposed during pretrial detention amounts to "punishment" in the constitutional sense, however.  Once the government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.  Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]."  Thus, if a particular condition or restriction of pretrial

> detention is reasonably related to a legitimate
> governmental objective, it does not, without more,
> amount to "punishment."  Conversely, if a restriction
> or condition is not reasonably related to a legitimate
> goal--if it is arbitrary or purposeless--a court
> permissibly may infer that the purpose of the
> governmental action is punishment that may not
> constitutionally be inflicted upon detainees <u>qua</u>
> detainees.  ...

<u>Bell v. Wolfish</u>, 441 U.S. at 535-39 (citations omitted).  The

Court further explained that the government has legitimate

interests that stem from its need to maintain security and order

at the detention facility.  "Restraints that are reasonably

related to the institution's interest in maintaining jail

security do not, without more, constitute unconstitutional

punishment, even if they are discomforting and are restrictions

that the detainee would not have experienced had he been released

while awaiting trial."  441 U.S. at 540.  Retribution and

deterrence, however, are not legitimate nonpunitive governmental

objectives.  441 U.S. at 539 n.20.  Nor are grossly exaggerated

responses to genuine security considerations.  <u>Id.</u> at 539 n.20,

561-62.

Here, Beaver alleges no discomforting restrictions other

than that he was confined in administrative segregation so as to

limit his access to the law library.  He does admit, however,

that he was permitted access to the law library once a week.

Consequently, this Court finds that Beaver fails to state a claim

of constitutional magnitude with respect to his conditions of

confinement.  There are no allegations of genuine privation and

hardship over an extended period of time might raise serious

questions under the Due Process Clause as to whether those conditions amounted to punishment." Bell, 441 U.S. at 542. Therefore, this conditions of confinement claim will be dismissed at this time as against the BCDC, Lt. Larkens, and the Burlington County Freeholders of NJ.

This Court also finds that Beaver has not alleged facts sufficient to support a claim that he was denied access to the courts by restricting plaintiff's access to the law library to one time a week.  Courts have recognized different constitutional sources for the right of access to the courts.  Principally, the right of access derives from the First Amendment's right to petition and the due process clauses of the Fifth and Fourteenth Amendments.[12]  The right of access to the courts requires that "adequate, effective, and meaningful" access must be provided inmates who wish to challenge their criminal charge, conviction, or conditions of confinement.  Bounds v. Smith, 430 U.S. 817, 822

---

[12] The right of access to the courts is an aspect of the First Amendment right to petition.  McDonald v. Smith, 472 U.S. 479, 482 (1985); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731, 741 (1983); Milhouse v. Carlson, 652 F.2d 371, 373 (3d Cir. 1981).  The Supreme Court also found that "[t]he constitutional guarantee of due process of law has as a corollary the requirement that prisoners be afforded access to the courts in order to challenge unlawful convictions and to seek redress for violations of their constitutional rights." Procunier v. Martinez, 416 U.S. 396, 419 (1974), overruled on other grounds, Thornburgh v. Abbott, 490 U.S. 401, 413-14 (1989).  See also, Hudson v. Palmer, 468 U.S. 517, 523 (1984)("prisoners have the constitutional right to petition the Government for redress of their grievances, which includes a reasonable right of access to the courts"); Bounds v. Smith, 430 U.S. 817 (1977); Wolff v. McDonnell, 418 U.S. 539, 576 (1974).  The right of access to the courts might also arise under the Sixth Amendment's right to counsel; however, under the circumstances of the present case, the Sixth Amendment clearly is not implicated.

(1977).  In other words, prison officials must "give prisoners a

reasonably adequate opportunity to present claimed violations of

fundamental constitutional rights to the Courts."  Id. at 825.

"'[T]he touchstone ... is meaningful access to the courts.'"

Peterkin v. Jeffes, 855 F.2d 1021, 1037 (3d Cir. 1988)(quoting

Bounds, 430 U.S. at 823)(internal quotation omitted).

In Bounds, the Supreme Court held that "the fundamental

constitutional right of access to the courts requires prison

authorities to assist inmates in the preparation and filing of

meaningful legal papers by providing prisoners with adequate law

libraries or adequate assistance from persons trained in the

law."  The right of access to the courts is not, however,

unlimited.  "The tools [that Bounds] requires to be provided are

those that the inmates need in order to attack their sentences,

directly or collaterally, and in order to challenge the

conditions of their confinement.  Impairment of any other

litigating capacity is simply one of the incidental (and

perfectly constitutional) consequences of conviction and

incarceration."  Lewis v. Casey, 518 U.S. 343, 355 (1996)

(emphasis in original).  Similarly, a pretrial detainee has a

right of access to the courts with respect to legal assistance

and participation in one's own defense against pending criminal

charges.  See, e.g., May v. Sheahan, 226 F.3d 876, 883-84 (7th

Cir. 2000); Caldwell v. Hall, 2000 WL 343229 (E.D. Pa. March 31,

2000).  But see United States v. Byrd, 208 F.3d 592, 593 (7th

Cir. 2000) (pretrial detainee who rejects an offer of court-

appointed counsel in satisfaction of the Sixth Amendment right to counsel has no alternative right to access to a law library); Wilson v. Blankenship, 163 F.3d 1284, 1290-91 (11th Cir. 1998) (same); United States v. Walker, 129 F.3d 1266, 1997 WL 720385, **4 (6th Cir. 1997) (same).

Moreover, a prisoner alleging a violation of his right of access must show that prison officials caused him past or imminent "actual injury" by hindering his efforts to pursue such a claim or defense.  See Lewis, 518 U.S. at 348-51, 354-55 (1996); Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997). "He might show, for example, that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known.  Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable to file even a complaint."  Lewis, 518 U.S. at 351.

Here, Beaver expressly states that his access to the law library was restricted to once a week, but he does not allege any injury as a result.  Consequently, without any allegations of an actual injury, this claim against defendants BCDC, Lt. Larkens, and the Burlington County Freeholders, will be dismissed for failure to state a claim.

V.   <u>CONCLUSION</u>

For the reasons set forth above, plaintiff's claims against Ptl. Kyle Tuliano will be allowed to proceed at this time. Plaintiff's claims for police harassment against the Borough of Mifflinburg, PA, the Mifflinburg Police, the Union County Sheriff's Office, and the Union County Sheriff John P. Schrawder, will be severed from this action and transferred to the Middle District of Pennsylvania where venue under 28 U.S.C. § 1391(b) is proper.  However, the Complaint will be dismissed as to all the remaining defendants (other than Ptl. Tuliano, above) for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), (iii)  and 1915A(b)(1), (2).  Finally, plaintiff's motions to (a) enjoin defendants from making any "communication, detainment, prosecution, and/or warrants" against him, and (b) compel an investigation into plaintiff's statements, will be denied without prejudice at this time.   An appropriate order follows.


**March 11, 2008**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      United States District Judge